**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EAGLE NATIONWIDE | : | |
| MORTGAGE, CO. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-3868 |
| | : | |
| PLAZA HOME MORTGAGE, INC. | : | |

<u>Diamond, J.</u>                                                           **February 28, 2008**

**M E M O R A N D U M**

In this declaratory judgment action, Plaintiff Eagle Nationwide Mortgage Company has

moved for summary judgment, asking me to conclude that it is not a successor to Sunset Mortgage

Company, L.P. or Wausau Mortgage Company.  <u>See</u> 28 U.S.C. § 2201.  I will grant ENMC's

Motion.

**I.     BRIEF OVERVIEW**

Defendant, Plaza Home Mortgage, is a party to an arbitration in California concerning a

contract with Wausau.  Plaza has sought to add ENMC to the arbitration, contending that ENMC is

the successor to Sunset, and that Sunset is the alter ego of Wausau.  Thus, Plaza seeks to argue in

the arbitration that ENMC may be held liable for the obligations of Wausau.  ENMC contends in

the arbitration that it is not the successor of Sunset or Wausau.  In seeking a declaration to this

effect, ENMC seeks to absolve itself of liability in the arbitration.

**II.    LEGAL STANDARDS**

Upon motion of any party, summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Summary judgment may be granted only if the movant shows that "there

exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it could affect the result of the suit under governing law. Id.

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted).

In setting out the facts of this case, I have resolved all genuine factual disputes in Plaza's favor and construed all facts in the light most favorable to Plaza.

## III.   BACKGROUND

ENMC, a mortgage origination company, has been in existence since April, 2007. (Bromley Dep. at 11.) ENMC is a wholly owned subsidiary of Eagle National Bank. (Id. at 11-12, 23.)

In late 2006, Eagle National Bank ("Eagle") – headquartered in Upper Darby – entered into negotiations for a possible purchase of Sunset Mortgage Company, a mortgage origination business. (Bromley Dep. at 27-30.) The negotiations were unsuccessful. (Id. at 34-35.) In January, 2007, Eagle began negotiations to purchase Sunset's fixed assets. (Id. at 35.) Fulton

Bank, which had a lien on the assets, participated in the negotiations.  (Id. at 39.)

On April 24, 2007, Eagle National Bank and Sunset entered into a Fixed Asset Purchase

Agreement, which required Eagle to pay $1.1 million directly to Fulton Bank to release the lien on

"[c]ertain [f]ixed [a]ssets" belonging to Sunset:

> (a) all the equipment, leasehold improvements, hardware, software and other operating assets owned or leased by the Company as set forth on Schedule 2.1(a) attached hereto (the "Fixed Assets"); and
> (b) all the Books and Records of the Company relating to the Purchased Assets (the "Company Records").

(Doc. No. 12; Ex. E at 6; Bromley Dep. at 40-41.)  The Purchase Agreement also explicitly

excluded certain assets belonging to Sunset:

> [T]he Purchased Assets shall not include any other assets or properties of the Company, including without limitation (a) the Company's cash (operating and warehouse banks), cash equivalents, loans held for sale, accounts and notes receivable (due from investors, affiliates and others), chattel paper, documents, instruments, general intangibles (other than Intellectual Property), prepaid assets (commissions and other), deposits and loans in process and (b) Licenses issued to or held by the Company necessary or incidental to the conduct of the Business.

(Doc. No. 12; Ex. E at 5.) Finally, the Purchase Agreement excluded virtually all Sunset's

liabilities:

> Purchaser shall not assume, or be deemed to have assumed or guaranteed, or otherwise be responsible for and the Company shall retain and shall be solely responsible for paying, performing or discharging, as the case may be, any liability, obligation or claims of any nature of the Company, whether matured or unmatured, liquidated or unliquidated, fixed or contingent, known or unknown, or whether arising out of acts or occurrences prior to, at or after the date hereof ("Excluded Liabilities").  Without limiting the generality of the foregoing, the Excluded liabilities shall include (I) the Company's accounts payable, existing debt, contingent liabilities, pending or threatened (whether known or unknown) litigation and claims or subsequently asserted litigation and claims relating to any act, omission, event, occurrence, right, obligation or other circumstance in dispute relating to any time prior to the Closing, and real estate leases, (ii) any Liabilities for Taxes of the Company and (iii) any Liabilities associated with labor-related issues of the Company, including, without limitation, matters involving wages, accrued vacation time, holiday time, exempt and non-exempt employee classifications, severance arrangements, worker's compensation of any nature or equal opportunity.

(Id. at 5-6.)

The Purchase Agreement included a reference to a "Disclosure Schedule," which purported to "set[] forth the exceptions to the representations and warranties . . . ."  (Doc. No. 12; Ex. E at 2.) During discovery, ENMC acknowledged that the Disclosure Schedule was never actually created. (Doc. No. 13 Ex. B.)

Since the purchase of Sunset's fixed assets, ENMC has been headquartered in the Chadds Ford offices that were formerly Sunset's headquarters; it operates branch offices in roughly three-quarters of Sunset's former branches.  (Bromley Dep. at 14; Morelli Dep. at 14-15, 30.)  Many of Sunset's former employees and officers are now employed by ENMC or its parent corporation, Eagle National Bank.  (Bromley Dep. at 17-19.)

IV.    DISCUSSION

Although Plaza does not dispute that I may hear this case pursuant to the Declaratory Judgment Act, I will nevertheless review the prerequisites for bringing declaratory judgment actions.  See 28 U.S.C. § 2201.  I will then determine whether ENMC is a successor to Wausau or Sunset.

A.    Jurisdiction – Actual Controversy

A federal court may declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.  28 U.S.C. § 2201.  See also  West Am. Ins. Co. v. Park, 933 F.2d 1236, 1238 (3d Cir. 1991) (declaratory judgments are appropriate where final issue will be decided by an arbitrator).  In determining whether an actual controversy exists, courts look to the following "ripeness" factors: (1) whether the parties have adverse legal interests; (2) whether the facts are sufficiently concrete to allow for a conclusive legal judgment; and (3) whether the judgment would be useful to the parties.  See Surrick v. Killion, 449 F.3d 520, 527 (3d

4

Cir. 2006).

There is diversity jurisdiction in this case.  <u>See</u> 28 U.S.C. § 1332.  Accordingly, I must determine whether an actual controversy exists.

In evaluating the adversity of the parties' interests, courts look to "[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm." <u>Surrick</u>, 449 F.3d at 527 (quoting <u>NE Hub Partners, L.P. v. CNG Transmission Corp</u>, 239 F.3d 333, 342 n.9 (3d Cir. 2001)).  The adversity between ENMC and Plaza is obvious.  It appears undisputed that ENMC would be required to participate in the California arbitration if I found it to be Sunset's successor.  This would entail considerable time and expense, and could expose ENMC to substantial liability.  Accordingly, the first prong of the ripeness test is met.

The second factor is intended to determine whether a declaratory judgment would definitively determine the parties' rights, as opposed to serving as an advisory opinion.  <u>NE Hub</u>, 239 F.3d at 344.  This factor also goes to whether the issue to be determined is primarily factual or legal.  <u>Id.</u>  A declaratory judgment would definitively determine the parties' rights against one another in this case.  Moreover, although this case may present underlying factual questions, the primary issue to be decided – whether ENMC is a successor to Sunset and Wausau – is legal. Accordingly, the second prong of the ripeness inquiry is satisfied.

The final factor goes to "whether the parties' plans of actions are likely to be affected by a declaratory judgment." <u>NE Hub</u>, 239 F.3d at 344 (internal citations omitted).  This factor is undoubtedly satisfied.  Plaza  has already sought to add ENMC as a party to the arbitration.  Unless I determine that ENMC is the successor to Sunset (and so, ultimately, the successor to Wausau), Plaza will be unsuccessful in this effort.

In sum, all three ripeness factors are satisfied.  Accordingly, a declaratory judgment is

proper.

**B.      Successor Liability**

Because this is a diversity action and all the relevant events took place in Pennsylvania, I

will apply the substantive law of Pennsylvania.  See SmithKline Beecham Corp. v. Rohm and Haas

Co., 89 F.3d 154, 162 n.5 (3d Cir. 1996) (applying Pennsylvania law on successor liability where

Pennsylvania had the most significant relationship to parties and events).

A company that purchases all the assets of another company is not normally liable for the

seller's debts and liabilities.  Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 468 (3d Cir.

2006).  An exception to this general rule exists, however, if the circumstances indicate that there

was a *de facto* merger of the corporations.  Id., Continental Ins. Co. v. Schneider, Inc., 810 A.2d

127, 135 (Pa. Super. Ct. 2002).  Whether a *de facto* merger occurred is a question of law.  See Pol

Am Pak v. Redicon Corp., 2000 WL 1539079, *3 (E.D. Pa. October 18, 2000).  To determine

whether a *de facto* merger occurred, courts look to the following factors:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is
> continuity of management, personnel, physical location, assets, and general business
> operations.
>
> (2) There is a continuity of shareholders which results from the purchasing corporation
> paying for the acquired assets with shares of its own stock, this stock ultimately coming to
> be held by the shareholders of the seller corporation so that they become a constituent part
> of the purchasing corporation.
>
> (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves
> as soon as legally and practically possible.
>
> (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary
> for the uninterrupted continuation of normal business operations of the seller corporation.

Berg, 435 F.3d at 468-69.

Because the second factor is the most important, I will address it first.  Berg, 435 F.3d at

6

469 (court should "conduct a full analysis that emphasizes the ownership factor but does not rely

on it alone").   Nothing in the record shows a continuity of shareholders.  Eagle National Bank

bought Sunset's assets with cash, not its own stock or that of ENMC.  Plaza nonetheless contends

that this is a disputed factual issue warranting trial:

> It bears emphasizing that Plaza does not concede this point but has been hindered to date by
> Sunset's dissolution from identifying the shareholders of that privately-held entity.  It may
> indeed be the case that one or more of Sunset's shareholders are among the 150
> shareholders of Eagle which would establish continuity of ownership under Pennsylvania
> law.

(Doc. No. 13 at 14, n. 41 (internal citations omitted).)

Plaza cannot seriously maintain that this represents a genuine factual dispute.  First, if Plaza

has found no evidence of common ownership, then it has not met its burden in opposing summary

judgment.  See Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000) (non-moving party

must "provide some evidence that would show that there exists a genuine issue for trial.").

Moreover, it is surely disingenuous to suggest that Sunset's "dissolution" has somehow "hindered"

Plaza's ability to determine if there is common stock ownership between Sunset and ENMC or

Eagle.  Through interrogatories, requests for admission, or a Rule 30(b)(6) deposition, Plaza could

readily determine whether Eagle's or ENMC's shareholders were also Sunset's shareholders.

Plaza's apparent failure to take this discovery strongly suggests that Plaza prefers complaining of a

non-existent discovery "hindrance" to learning the truth.  In any event, because there is no genuine

factual dispute regarding common ownership, I am obligated to rule that this factor is not satisfied.

I will thus "continue the remainder of the analysis with a strong presumption against imposing

successor liability."  Berg, 435 F.3d at 469.

As to the first factor, Eagle National Bank purchased all Sunset's fixed assets, but none of

its outstanding loans or other purely financial assets.  ENMC came into existence at approximately

the same time as the April 2007 asset sale, and operates the same type of business in an office space formerly occupied by Sunset. A website identifies ENMC as "A Subsidiary of Eagle National Bank, and formally [sic] Sunset Mortgage Company, LP." (Doc. No. 13 at 8-9.) Finally, there is a considerable overlap between the management and personnel of Sunset and ENMC. Construing these facts in the light most favorable to Plaza, I rule that the first factor is satisfied.

As to the third factor, although Plaza contends that "Sunset ceased its ordinary business," neither Party has been able to show this with certainty. (Doc. No. 13 at 13.) Once again, drawing all reasonable inferences in favor of Plaza, I will assume that Sunset has ceased operations, and rule that this factor is satisfied.

The fourth factor is not satisfied. The record indicates only that Eagle paid the lien on the fixed assets to take the assets free and clear. Contrary to Plaza's contentions, this payment to Fulton Bank does not show that Eagle assumed Sunset's obligations so that it could continue Sunset's business operations. Rather, it confirms that Eagle intended to purchase only Sunset's fixed assets. Plaza argues that other obligations may have been listed in the Disclosure Schedule mentioned in the Purchase Agreement, but there is no evidence that this document ever existed, let alone that it provided for Eagle to assume liabilities necessary to keep Sunset's business running. Moreover, the Purchase Agreement explicitly states that Eagle does not assume these kinds of liabilities – such as payroll, taxes, leases, or contractual obligations. See Heritage Realty Management, Inc. v. Symbiot Snow Management Network, LLC, 2007 WL 2903941, *9 (W.D. Pa. 2007) (buyer's assumption of contracts, leases, and accounts receivable of seller corporation satisfied this factor).

In sum, Plaza's failure to establish the second factor creates a strong presumption that there was not a de facto merger between Sunset and Eagle or ENMC. This presumption is reinforced by

8

the failure to satisfy the final factor.  Accordingly, I conclude that there was no *de facto* merger, and that ENMC is not the successor of Sunset.

**V.      CONCLUSION**

The undisputed facts show that ENMC is not a successor to Sunset.  Plaza has never argued that ENMC is Wausau's direct successor.  Rather, Plaza contends that ENMC is the successor to Wausau through Sunset because Sunset is Wausau's "alter ego."  (Doc. No. 13 at 2-3.)  In light of my ruling that ENMC is not Sunset's successor, ENMC necessarily cannot be Wausau's successor. Accordingly, I need not address ENMC's remaining contention: that the relationship between ENMC and Sunset aside, on the other facts presented Sunset is not the successor to Wausau.

For all these reasons, I grant ENMC's Motion for Summary Judgment.  An appropriate Order follows.

BY THE COURT.

*/s Paul S. Diamond*
_____
Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EAGLE NATIONWIDE** | : | |
| **MORTGAGE, CO.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 07-3868** |
| | : | |
| **PLAZA HOME MORTGAGE, INC.** | : | |

---

## ORDER

AND NOW, this 28th day of February, 2008, it is ORDERED that:

1.      Plaintiff's Motion for Summary Judgment is GRANTED.

2.      Judgment is entered in favor of Plaintiff and against Defendant.

2.      It is DECLARED that Plaintiff is not the successor to Sunset Mortgage Company,

L.P. or Wausau Mortgage Company.

3.      The Clerk shall close this case for statistical purposes.


IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.